IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MELISSA C.,[1] | Case No. 2:20-cv-01070-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Melissa C. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. §

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

405(g), and the parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.   PLAINTIFF'S APPLICATIONS

Plaintiff was born in May 1968, making her forty-seven years old on August 26, 2015, her amended alleged disability onset date. (Tr. 13, 87.) Plaintiff has some college education and past relevant work experience as a beautician and receptionist. (Tr. 22, 95.) In her applications,

PAGE 2 – OPINION AND ORDER

Plaintiff alleged disability due to a gene mutation disorder, severe blood clots in her legs and lungs, nerve damage in her legs, spleen tumors, and depression. (Tr. 88, 239.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on July 10, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 13.) Plaintiff, impartial medical experts, and a vocational expert ("VE") appeared and testified at an administrative hearing held on July 10, 2019. (Tr. 31-62.) On July 25, 2019, the ALJ issued a decision denying Plaintiff's applications. (Tr. 10-25.) On May 12, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-5.) Plaintiff now seeks judicial review of that decision.

## II.   THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those

PAGE 3 – OPINION AND ORDER

steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

### III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 16-24.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 26, 2015, the amended alleged disability onset date. (Tr. 16.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[P]rothrombin gene mutation, extreme obesity, degenerative disc disease, major depressive disorder and anxiety disorder[]." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 17.)

The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b)[,]" subject to these limitations: (1) Plaintiff "can lift no more than 20 pounds at a time occasionally and can lift or carry 10 pounds at a time frequently[,]" (2) Plaintiff "has no limitation sitting and can stand 1 hour and walk 1 hour[,]" (3) in an 8-hour workday with normal breaks, Plaintiff "has no limitation sitting and can stand and walk a total of 4 hours per day, in any combination[,]" (4) Plaintiff can "occasionally stoop, crouch, kneel, crawl, and balance" and can "occasionally climb ramps or stairs but never climb ladders or scaffolds[,]" (5) Plaintiff "must avoid concentrated exposure to heavy industrial-type vibration, extreme cold, and hazardous machinery; and she can have no exposure to unprotected heights[,]" and (6) Plaintiff "can understand, remember and

PAGE 4 – OPINION AND ORDER

carry out simple, routine and/or repetitive work instructions and work tasks; can have superficial contact with the public; can work with or in the vicinity of coworkers but not in a teamwork-type work setting; can handle normal supervision (i.e., no over-the-shoulder or confrontational type of supervision); needs a routine work setting with little or no changes; and cannot perform fast-paced or strict production quota-type work, but can handle end of day goals." (Tr. 19.)

At step four, the ALJ concluded that Plaintiff could not perform her past relevant work. (Tr. 22-23.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a garment sorter, weight recorder, and laundry sorter. (Tr. 23-24.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) failing to provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony; (2) failing to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's friend, Christy G.; and (3) failing to include all of Plaintiff's limitations in the RFC assessment. (Pl.'s Opening Br. at 3.) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record.

I.  **PLAINTIFF'S SYMPTOM TESTIMONY**

   A.  **Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the

PAGE 5 – OPINION AND ORDER

claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.     Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 20, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ satisfied that standard here.

///

///

### 1.    Daily Activities

Plaintiff argues that the ALJ erred in discounting her testimony based on her reported activities. (Pl.'s Opening Br. at 8.)

An ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); *Garrison*, 759 F.3d at 1016 (explaining that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations").

The ALJ concluded that the record "demonstrates functional abilities and behaviors that are inconsistent with the duration, frequency and severity of the alleged limitations." (Tr. 21.) The ALJ supported his conclusion by citing Plaintiff's ability to "do laundry, vacuum, dust and water plants" and "independently drive and shop in stores[]." (Tr. 21, 258.) The ALJ also cited an August 2018 record reflecting that Plaintiff "reported going to Las Vegas with a friend for a week and enjoying nice vacation time[]." (Tr. 21, 891.) The ALJ further cited September 2016 medical records reflecting that Plaintiff "reported stretching every morning and trying to walk every day for 20 minutes," which conflicted with Plaintiff's allegations of "barely being able to walk." (Tr. 21, 569.) The ALJ concluded that Plaintiff's "level of activity during the entire period under adjudication is inconsistent with her allegations of barely being able to walk." (Tr. 21.) The Court finds that the inconsistency between Plaintiff's activities and her alleged limitations was a clear and convincing reason to discount her symptom testimony, and was supported by substantial evidence in the record.

PAGE 7 – OPINION AND ORDER

### 2. Contradictory Medical Evidence

Plaintiff also argues that the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony based on the medical record. (Pl.'s Opening Br. at 7-8.) Specifically, Plaintiff argues the ALJ improperly relied on isolated incidents where Plaintiff's gait appeared normal and cherry-picked isolated examples of improvements in her mental health. (*Id.*)

#### a. Physical Health Limitations

The ALJ discounted Plaintiff's symptom testimony in part based on contradictory medical evidence. An ALJ may discount a claimant's symptom testimony based on contradictory medical evidence. *See, e.g.*, *Smith v. Berryhill*, 752 F. App'x 473, 475 (9th Cir. 2019) (holding that the ALJ satisfied the clear and convincing reasons standard and noting that the ALJ appropriately discounted the claimant's testimony based on, among other reasons, the presence of "contradictory medical evidence" in the record).

Here, the ALJ examined the relevant medical evidence, and limited Plaintiff to a reduced range of light work with postural and environmental limitations in light of Plaintiff's "facet degeneration confirmed by MRI and physical examination findings showing tenderness and poor range of motion."[3] (Tr. 20.) The ALJ also limited Plaintiff to no more than four hours of standing or walking per workday, and not more than one hour at a time. (Tr. 19.) However, the ALJ found that "no greater limitation is warranted as the claimant general[ly] exhibits a normal gait and station with full muscle strength and negative straight leg raising bilaterally." (Tr. 20.) Substantial evidence in the record supports the ALJ's conclusion. (*Compare, e.g.*, Tr. 543 *with* 359, 536, 893, Plaintiff exhibited a slowed gait at some appointments (e.g., October 2015), but

---

[3] The ALJ also limited Plaintiff's range of work due to her prothrombin gene mutation by limiting her exposure to unprotected heights or hazardous machinery. (Tr. 20.)

demonstrated a normal gait and station with normal muscle strength at other appointments (e.g., September 2015, November 2016, and August 2018); Tr. 1058, 1060, in May 2018, Plaintiff presented to the emergency department with complaints of right low back pain radiating down her leg, but a physical examination revealed full lower extremity muscle strength bilaterally and negative straight leg raises bilaterally).

Accordingly, the Court concludes that the ALJ did not err by discounting Plaintiff's physical symptom testimony on the ground that it conflicted with the medical evidence.

### b.     Mental Health Limitations

Plaintiff also argues that the ALJ erred by minimizing her mental health symptoms by improperly relying on reports that Plaintiff's mental health impairments were "stable" on medication. (Pl.'s Opening Br. at 8.)

The ALJ examined the medical evidence relating to Plaintiff's mental health, and concluded that Plaintiff must be limited to "simple, routine and/or repetitive work instructions and work tasks; can have superficial contact with the public; can work with or in the vicinity of coworkers but not in a teamwork-type work setting; can handle normal supervision (i.e., no over-the-shoulder or confrontational type of supervision); needs a routine work setting with little or no changes; and cannot perform fast-paced or strict production quota-type work, but can handle end of day goals." (Tr. 19.)

However, the ALJ found no need for additional limitations, noting inconsistencies between Plaintiff's symptom testimony and the medical record, and evidence of effective mental health treatment. Those are clear and convincing reasons to discount Plaintiff's testimony, supported by substantial evidence here. (*Compare* Tr. 255-57, 259-60, 427 *with* 383, 689, although Plaintiff's mental status examinations documented impaired short-term memory, Plaintiff stopped taking one of her medications in September 2016 and reported that her memory

PAGE 9 – OPINION AND ORDER

improved and she no longer felt like her head was "in a cloud," and additional mental status examinations documented intact memory for recent and remote events; *compare* Tr. 258, 260 *with* 359, 789, 858, Plaintiff alleged she has a short temper and does not like to be around family, friends, or neighbors, but the record reflects she interacted cooperatively and pleasantly with medical personnel and exhibited good eye contact; *compare* Tr. 255-57, 259-60 *with* 258-59, 689, Plaintiff alleged difficulty with completing tasks and concentration, but is able to drive independently and shop in stores, and additional mental status examinations documented normal concentration; *compare* Tr. 259-61, *with* 258-59, 359, Plaintiff alleged she handles stress and changes in routine poorly, but she is able to drive independently and shop in stores, and presents as appropriately groomed and dressed at medical appointments; Tr. 357, at a November 2016 appointment, Plaintiff's anti-depressant medication was increased, which she tolerated well).

For these reasons, the Court concludes that the ALJ did not err in discounting Plaintiff's symptom testimony.

## II. LAY WITNESS TESTIMONY

### A. Applicable Law

An ALJ "'must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "'germane to each witness.'" *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal.

PAGE 10 – OPINION AND ORDER

Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

B.      Analysis

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's friend, Christy G. (*See* Pl.'s Opening Br. at 9.)

The ALJ addressed Christy G.'s third-party function report, noting her comments that "the claimant cannot stand or sit for long periods and experiences brain fo[g] and memory loss that prevents her from working." (Tr. 22, 263-70.) The ALJ discounted these observations on the ground that they were "vague and do not indicate what degree of ability the claimant would retain." (Tr. 22.) In addition, the ALJ afforded Christy G.'s opinion little weight because she "is not a medical professional trained to assess specific functional limitations." (*Id.*)

Vagueness is a germane reason to discount a third-party function report, and Christy G.'s report that Plaintiff cannot stand or sit for "long periods" was vague. *See Quiralte v. Comm'r Soc. Sec.*, No. 1:19-cv-01547-HBK (SS), 2021 WL 4705240, at *7 (E.D. Cal. Oct. 8, 2021) (finding that a third party's report that the claimant cannot walk "too far" provided little guidance because "far" is entirely subjective, and holding that "[i]n finding [the third party's] testimony to be vague, the ALJ provided a germane reason to discount it").

In any event, Christy G. opined on Plaintiff's leg weakness, pain, memory issues, and dealing with other people. As explained above, substantial evidence supports the ALJ's discounting of Plaintiff's symptom testimony regarding both her physical and mental impairments. Accordingly, even if the ALJ erred in discounting Christy G.'s testimony, any error

PAGE 11 – OPINION AND ORDER

was harmless because Christy G. described the same limitations as Plaintiff which the ALJ discounted for clear and convincing reasons. *See Blacksher v. Berryhill*, 762 F. App'x 372, 377 (9th Cir. 2019) ("Ms. Blacksher's testimony was substantially similar to that of her son. Because the ALJ provided clear and convincing reasons for discounting Blacksher's statements, 'it follows that the ALJ also gave germane reasons for rejecting' Ms. Blacksher's similar testimony, and so any error was harmless.").

### III.    PLAINTIFF'S RFC

For the same reasons discussed above, Plaintiff argues that the RFC failed to reflect all of her physical and mental limitations. (Pl.'s Opening Br. at 10.) The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (affirming the ALJ's translation of moderate functional limitations into the claimant's RFC). "Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE." *Leroy M. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-cv-0632-HZ, 2019 WL 4276996, at *6 (D. Or. Sept. 10, 2019) (quoting *Rhinehart v. Colvin*, No. 2:15-cv-01704-AC, 2016 WL 7235680, at *12 (D. Or. Dec. 12, 2016) and citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001)). For the reasons discussed above, the ALJ properly weighed the evidence and incorporated Plaintiff's credible limitations into the RFC. *See Sam B. v. Comm'r of Soc. Sec.*, No. 2:19-CV-00354-DWC, 2019 WL 5541347, at *4 (W.D. Wash. Oct. 28, 2019) ("[T]he RFC assessment and the hypothetical questions posed to the VE were properly based on the credible functional limitations contained in the record, and thus both the RFC assessment and the hypothetical question posed to the VE were proper."); *Diane M. v. Comm'r of Soc. Sec.*, No. 3:17-cv-01971-BR, 2018 WL 6440889, at *8 (D. Or. Dec. 6, 2018) ("[T]he Court concludes the ALJ did not err

PAGE 12 – OPINION AND ORDER

when he assessed Plaintiff's RFC and he accounted for all credible limitations in his assessment."). Accordingly, the Court concludes the ALJ did not err in formulating Plaintiff's RFC. See *Timothy S. v. Comm'r Soc. Sec.*, No. 6:20-cv-01371-JR, 2021 WL 3559452, at *4 (D. Or. Aug. 11, 2021) ("The ALJ weighed the evidence and translated into the RFC all of plaintiff's limitations that were supported by substantial evidence and posed hypothetical questions to the VE consistent with that RFC. Accordingly, the Court concludes the ALJ did not err in formulating plaintiff's RFC that accounted for all of plaintiff's credible limitations[.]").

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 13th day of October, 2021.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 13 – OPINION AND ORDER